**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **INES BERRIOS RIVERA, INES M. FUENTES BERRIOS; EDWARD M. FUENTES BERRIOS AND IAN M. FUENTES BERRIOS**<br>Plaintiffs,<br>vs.<br>**DOCTORS CENTER HOSPITAL CAROLINA, LLC.; D/B/A DOCTORS' CENTER HOSPITAL SAN FERNANDO DE LA CAROLINA; A, B, C, D, E, F.**<br>Defendants. | **CIVIL NO.**<br><br>RE: DISABILITY DISCRIMINATION (ADA); RETALIATION; UNJUSTIFIED DISMISSAL; SINOT VIOLATION<br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

**COME NOW**, Plaintiffs Ines Berrios Rivera ("Berrios"), Ines M. Fuentes Berrios; Edward M. Fuentes Berrios and Ian M. Fuentes Berrios, through their undersigned attorneys and respectfully **STATES, ALLEGES and PRAYS**:

## I. NATURE OF THE ACTION AND JURISDICTION

1. Plaintiff Berrios hereby invokes this Honorable Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 for this action seeking compensatory damages, equitable and injunctive relief, costs and attorneys fees brought pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* as a result of Defendant Doctors' Center Hospital Carolina, LLC. d/b/a Doctors' Center Hospital San Fernando De La Carolina ("Doctors'") continuous unlawful and willful employment practices (hostile work environment and harassment based on Berrios' disabilities, and retaliation based on her requests for reasonable

accommodations, which eventually led to Berrios' unlawful retaliatory termination of her employment with Doctors.

2. Berrios additionally summons this Honorable Court's pendent/supplemental party jurisdiction under 28 U.S.C. § 1367 seeking redress for violations of various Puerto Rico laws, including but not limited to, Act No. 44 of July 2, 1985, 1 L.P.R.A. §§ 501 et seq.; Act No. 80 of May 30, 1976, 29 L.P.R.A. §185a-185l; Act No. 115 of December 20, 1991, 29 L.P.R.A. §§194 et seq.; Puerto Rico's Constitution, Article II**,** Sections 1, 8, 16, 20, under Act No. 139 of June 26, 1968, 11 L.P.R.A. §§ 201 *et seq.* and Puerto Rico's Civil Code, Article 1802, 31 L.P.R.A. § 5141.

3. Berrios invokes this Honorable Court's supplemental/pendent party jurisdiction under 28 U.S.C. § 1367 to hear and decide those claims arising under the Commonwealth of Puerto Rico's Constitution and other Puerto Rico laws invoked herein because such claims arose from the same nucleus of operative facts giving rise to Berrios' claims under federal law.

4. Berrios' federal law claims under the ADA and her Puerto Rico law claims as well as the other party plaintiffs' claims against Doctors' arise from a common nucleus of operative facts that are so related to both Berrios ADA and Puerto Rico law claims that they would be ordinarily expected to be tried in one judicial proceeding.

5. On September 15, 2016, Berrios timely filed with the Equal Employment Opportunity Commission ("EEOC") an administrative charge claiming, among other things, that she had requested reasonable accommodation from her employer Doctors' due to her physical disabilities and was later retaliated for requesting such reasonable accommodation as she was stripped from her functions as a supervisor and her salary was reduced. Such administrative

charge had the effect of tolling her federal and Puerto Rico law claims against Defendant Doctors'.

6. The previously stated administrative employment discrimination charge was assigned number 515-2016-00591C.

7. On February 28, 2018, the EEOC issued and mailed a Right-To-Sue Notice in the above referenced EEOC Charge No. 515-2016-00591C. On March 1, 2018, Berrios received the before stated Right-To-Sue Notice issued by the EEOC.

8. Plaintiff Berrios seeks redress for the damages suffered and those damages she continues to suffer as a result of Doctors' continuous unlawful employment discrimination on the basis of her physical and emotional disabilities, request for reasonable accommodation, violation of her constitutional rights, unjustified dismissal and for being retaliated because Berrios engaged in various statutorily protected activities, including but not limited to, opposing the before mentioned unlawful employment practices, requesting reasonable accommodation for her disabilities and seeking and receiving treatment under Puerto Rico's SINOT law for her disabilities.

9. The other named Party Plaintiffs Berrios Fuentes are the sons and daughter of Plaintiff Berrios who have suffered economic and emotional damages resulting from Defendant Doctors' unlawful discrimination and retaliation against their mother.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## II. THE PARTIES

11. At all relevant times to this Complaint, Berrios is a female citizen of the United States of America and was until recently a resident Naranjito, Puerto Rico. At present, Berrios resides at 411 Montgomery St. Jersey City, New Jersey 07302.

12. At all relevant times to this Complaint, Ines M. Fuentes Berrios, is of legal age, a U.S. citizen and a resident of Naranjito, Puerto Rico. Ines M. Fuentes Berrios is the daughter of Plaintiff Ines Berrios.

13. At all relevant times to this Complaint, Edward M. Fuentes Berrios, is of legal age, a U.S. citizen and a resident of Corozal, Puerto Rico. Edward M. Fuentes Berrios is the son of Plaintiff Ines Berrios.

14. At all relevant times to this Complaint, Ian M. Fuentes Berrios, is of legal age, a U.S. citizen and a resident of Corozal, Puerto Rico. Edward M. Fuentes Berrios is the son of Plaintiff Ines Berrios.

15. While being employed by Doctors, Berrios became physically disabled. Berrios was diagnosed with herniated discs, degenerative disc disease and other lumbar lower back impairments, all of which are physical disabilities that are covered by the ADA. These disks are rubbery cushions between the individual bones (vertebrae) that stack up to make a spine.

16. During her work tenure, Berrios further became emotionally disabled due to her major depressive recurring and anxiety disorders, which are mental conditions covered by the ADA as a result of her unlawful working environment.

17. Berrios' both physical and emotional disabilities are covered by the ADA.

18. On June 27, 2017, Berrios was operated on by Dr. Lastra, a neurosurgeon and she underwent a laminectomy and discectomy of her herniated L1, S5 disks.

19. A laminectomy is the removal of the lamina or spongy tissue between the disks in the spine, to help relieve the symptoms of an injured disk. A discectomy is the removal of an injured disk.

20. Berrios' disabilities affect her major life activities of working, walking, carrying objects, bending, sitting, standing, dressing, daily hygiene, concentrating, thinking, and sleeping, among others.

21. At all times relevant hereto, Plaintiff Berrios was a "qualified individual with a disability" within the meaning of such term as provided by the ADA and Puerto Rico laws. Berrios could perform her former essential job functions of her occupational classification while employed at Doctors with and without reasonable accommodation.

22. At all relevant times to this Complaint, Berrios was an "employee" within the definition of such term as provided by ADA and the laws of the Commonwealth of Puerto Rico which have been invoked herein.

23. At all relevant times to this Complaint, named party Defendant Doctors' is a corporation or other legal entity with the legal capacity to sue and be sued.

24. Defendant Doctors is considered an "employer" within the definition of such term as provided by the ADA and the laws of the Commonwealth of Puerto Rico that have been invoked herein.

25. At all relevant times hereto, Doctors has employed twenty (20) or more employees.

26. Defendant Doctors is engaged in an industry affecting commerce within the meaning of such term as provided by the ADA, 42 U.S.C. §12111(7).

27. Defendants Doctors is also considered a "person" within the meaning of such term as provided by the ADA, 42 U.S.C. §12111(7).

28. Defendants ABC Insurance Companies are the insurers of all the named party defendants herein. Defendants ABC Insurance Companies have insurance policies which at all times relevant hereto, were in full effect and cover the liabilities and/or unlawful acts which were committed by the defendants herein mentioned.

29. Plaintiffs are using the fictitious names of ABC because at this time they do not know the real names of such insurance companies. Once these names become known, Plaintiffs will move this Honorable Court for the substitution of such party defendants.

30. Defendants DEF are the fictitious names of other individuals that jointly participated along with Defendant Doctors in other unlawful acts against Plaintiff Berrios. Plaintiffs are using the fictitious names of DEF because at this time they do not know the real names of these defendants. Once these names are known, Plaintiffs will move this Honorable Court for the substitution of said party defendants.

31. All named party defendants that comprise Doctors and their agents have received actual knowledge of Berrios' administrative charge claiming, among others, employment discrimination and retaliation filed before the EEOC.

32. All named party defendants herein are jointly and severally liable to Berrios for the unlawful employment practices and damages claimed herein.

## III. FACTUAL NARRATIVE COMMON TO ALL CLAIMS

33. On or about November 23, 2015, Berrios was recruited by Mrs. Ada L. Ramirez, Director of the Nursing Department at Doctors. During Berrios first work week, she was on the job training with Mrs. Ilia Perez, from the Utilization Department.

34. During her second workweek from November 30, 2015 to December 6, 2015, Berrios commenced with her job duties with Mrs. Ada L. Ramirez, Director of the Nursing Department and her immediate supervisor.

35. On November 23, 2015, Berrios was hired as a Coordinator of the Liaison Officials with a fixed work shift of 11:00am until 7:00pm.

36. On February 29, 2016, at the expiration of her probationary period, Berrios was notified with her regular appointment as Coordinator of the Liaison Officials ("Coordinadora de Oficiales de Enlace") at Doctors'.

37. As Coordinator of the Liaison Officials, Berrios' work duties encompassed the following: The coordinating and supervising of all activities related to the tasks of office clerks of all clinical units of the Hospital; Verifying that all documents within the patient's medical records were duly identified; Evaluating, monitoring and tracking of patients' data process in accordance with Doctors' rules and regulations, including all transfers to other institutions; Responsible for monitoring the custody, management, breakdown, transfer, arrangement of medical records, to be handed over to Medical Record's Department and/or Admissions Department; In charge of the distribution and coordination of request forms for ancillary services within the hospital; Responsible for the effectiveness of internal as well as external communications between the hospital's working stations, including answering the phone, taking and delivering messages, making necessary calls, and making required appointments for patient's diagnostic tests;

Responsible for assuring all consults to the areas of social work, discharge arrangement, and medical specialist are duly notified within 24 hours; Accountable for making sure all working stations are clean and organized.

38. Berrios was further responsible that all Clinical Unit Clerks notified the Nursing Supervisor of all problems and/or complaints brought by patients and/or family members; In charge of making sure all laboratories results, specialized studies, and consults are incorporated in the corresponding medical record, within 24 hours; Responsible for the process of updating the census with the clinical unit supervisor; Responsible for processing all requisitions of materials and medical record's sheets with the Purchasing Department; Responsible for the process of coordinating ambulances in accordance with the established rotation; Evaluating all medical records in order to identify incomplete documentation and notify to supervisors and/or physicians; Attend educational seminars and meetings; Responsible for monitoring a suitable flow of information within all medical units, for announcements and on call programs; Responsible for giving support to case managers and the Utilization Department; Responsible of monitoring clerks' assistance and punctuality; Responsible for making sure clerks comply with corporations' image policy; Establish disciplinary actions; Responsible for balancing payroll reports; Responsible for preparing clerks' working schedule, in coordination with the Utilization Department Supervisor, taking into account employees' request for vacations, holidays, and other requests; Guarantee that all working stations have all necessary working materials; Assisting and coordinating clerks' attendance to educational lectures; Prepare quality reports; Carry out any other tasks related to the position, as assigned by the Supervisor.

39. During her first weeks of employment, Berrios was assigned work shifts from 8am to 5pm and from 2pm to 10pm in order to acquire knowledge with various Doctor's forms and documents, personnel assigned to the Liaison office and their functions.

40. During the months of January and February 2016, Berrios was assigned work shifts from 8am to 5pm so as to assist Ms. Lisbeth Nieves, who was the secretary or personal assistant of Mrs. Ramirez, Director of the Nursing Department at Doctors. As such, Berrios organized official documents and prepared folders for an upcoming Inspection to be performed by the Joint Commission and by Puerto Rico's Health Department. The Joint Commission is an independent, not-for-profit organization that accredits and certifies health care organizations and programs in the United States.

41. After the stated Joint Commission Inspection was completed, Berrios commenced working and performing her functions as a Liaison Official and as a Coordinator. During the month of February 2016 and subsequently, Mrs. Ramirez, Director of the Nursing Department, instructed Berrios to cover certain work shifts due to employee absences in different hospital floors and in the Emergency Room. Such work shifts were from 6:00am to 2:00pm and from 2:00pm until 10:00pm, in addition to Berrios' duties as a Coordinator. Mrs. Ramirez never authorized Berrios' overtime compensation and instructed that she would have to perform the duties of two positions during the regular eight hour work shift.

42. At this time, Berrios became distraught and stressful as she was working as a Liaison Officer which impeded her from effectively performing her functions as Coordinator.

43. As a result of performing the job responsibilities of two (2) positions, Berrios verbally requested through Lisbeth Nieves, to meet and confer with Mrs. Ramirez, the Nursing Director at

Doctors' Hospital, as to her working conditions which were affecting Berrios' duties and responsibilities as a Coordinator. Although Berrios requested a meeting with Mrs. Ramirez, this meeting never took place as all communications were through Lisbeth Nieves and electronically through "What's Up." Ramirez further instructed Berrios that she could rotate personnel so as to offer the weekend shifts for the Liaison officials, the opportunity to train them and that Berrios continue performing her functions.

44. Berrios further wanted to discuss with Mrs. Ramirez the rotation of employees, Liaison Officials, during weekends which was instructed by Mrs. Ramirez. However, despite Berrios request that Ramirez' instructions involving weekend shifts be placed in writing, Ms. Nieves indicated that this was not necessary.

45. On February 2, 2016, Berrios wrote a letter to Mrs. Ada Ramirez requesting a meeting to discuss with her several work related matters. Among such matters, was the fact that Berrios was working overtime, which was not being compensated, and how her emotional well-being was being adversely affected.

46. After preparing the schedule for work-shift rotations, Berrios delivered such schedule to Lisbeth Nieves, who stated to Berrios that Ramirez wanted to meet with her the following day, March 28, 2016.

47. On March 28, 2016, Berrios met with Ramirez and she informed Berrios that she can only meet with her in life or death situations meaning crucial. Berrios did not have an opportunity to engage in a dialogue with Ramirez or to provide the work-shift rotations. Berrios was further not allowed to explain to Ramirez how her added work responsibilities, as being assigned to other areas that are covered by the Liaison officials, was affecting her.

48. On the following day, March 29, 2016, Berrios was finally able to grieve about her added work responsibilities with Mrs. Ramirez. On such date, Berrios grieved to Mrs. Ramirez about her work load and Ramirez insisted to Berrios that she had to perform both functions because there was no other available personnel and that such personnel that was to be rotated had agreements of fixed work shifts. Berrios further voiced her concern to Ramirez that she was overworked performing those functions as a Liaison officer, that she was not able to perform both job functions and how Berrios working conditions were distressing to her emotional health.

49. Subsequently, during the first two weeks of April 2016, Ramirez instructed Doctor's Human Resources Department to have Berrios removed from her position and salary as Coordinator without her being so notified.

50. When Berrios went to the Human Resources Department to pick up the work shift program and schedules, is when she first became aware of the previous personnel decisions affecting her.

51. Under the new work shift schedule, Berrios was placed last on the list of Liaison officials with rotating work shifts in all work areas and shifts. At this time, Berrios further became aware of the recruiting of new personnel and the use of a Liaison official for the training of such new personnel. This training was part of Berrios' functions as a Coordinator.

52. Berrios continued working as a Liaison Official, despite the fact she was hired as a Coordinator. This situation affected her reputation, dignity, self-esteem and health. The new work shifts affected her health and required her to take medication to help her cope with the stress of added responsibilities.

53. Berrios was forced to sign a letter requested by Mrs. Ramirez wherein it requested a change in the job position and reduction in salary to which she was originally hired for. Due to her economic necessity, Berrios was left with no other choice than to sign the referenced letter on April 5, 2016.

54. Thereafter, Berrios requested Lisbeth Nieves, that due to her health conditions she should not be working the night shifts (on call) due to her medication. The list of such medications was made known to Doctors' and should be in her medical files with her previous employer, Doctors'.

55. On or about May 3, 2016, Berrios then requested a reasonable accommodation not to work the night shifts. Berrios provided a medical certificate dated April 6, 2016 requesting that she not be assigned the night shifts because her health was being compromised and that her emotional condition could worsen. Berrios made a reasonable accommodation request through her psychiatrist, Dr. Rafael Cabrera Aguilar. Dr. Cabrera Aguilar's medical certificate was notified to Defendant Doctors' officials and to Mrs. Ramirez, Berrios' immediate supervisor.

56. Berrios' request for reasonable accommodation through the stated medical certificate caused a lot of controversy as Mrs. Ramirez and Mrs. Roman insisted that Berrios' work contract required working on rotating shifts, but such contract did not apply to all those occupying the Liaison Official position and that it further required the evaluation by an Occupational physician to be hired by the employer, Doctors'.

57. Despite Berrios' request for reasonable accommodation via a medical certificate, Berrios inquired to Mrs. Roman about her required pending appointment with the Occupational

Physician. Mrs. Roman responded that she had spoken with Doctors' Occupational Physician and that he replied that Berrios' conditions did not qualify for any reasonable accommodation under the ADA. Berrios was never evaluated by the stated Occupational Physician.

58. Due to Berrios' economic necessities, she continued working on all work shifts assigned by Mrs. Ramirez, without any type of help or reasonable accommodation. As such, Berrios' health continued to deteriorate, and she became decompensated requiring medical treatment and even a partial hospitalization.

59. Doctors' never engaged in any interactive dialogue with Berrios following her reasonable accommodation request based on her emotional conditions.

60. On August 15, 2016, Berrios requested Temporary Non Occupational Disability Insurance benefits (SINOT, in Spanish). Dr. Juan M. Crespo Montoya signed said petition identifying the term of the disability as from June 23, 2016, through December 31, 2016. According to Dr. Crespo Montoya, a psychiatrist, the diagnoses that disabled the patient were code Identified as: F41.0, GS4 1, F33.2, 149.5, K59.0, K59.2, N31.2, R2S.8, and 41.1.

61. SINOT's determination was rendered on October 4, 2016, granting Ms. Berrios temporary benefits due to her disability from June 23, 2016 through January 7, 20l7.

62. On August 10, 2017, Berrios requested from her employer Doctors' an unpaid leave of absence as a reasonable accommodation under the ADA and Puerto Rico Act 44 until February 1, 2018 as she was subjected to back surgery on June 27, 2017 for the repair of her herniated disks.

63. Berrios' request for reasonable accommodation to Doctors' was ignored and her employer failed to engage in the interactive process or dialogue which is required by the ADA and Puerto Rico Act 44.

64. Berrios continued to be a Doctors' employee and on payroll until September 8, 2017, when Berrios was discharged from her employment, just two days after the passage of Hurricane Irma.

65. Berrios was terminated from her employment in retaliation for having requested reasonable accommodations for her disabilities. Berrios was further terminated from her employment because of her disabilities.

66. Throughout her employment tenure with Doctors', Berrios performed her work duties within her employer's legitimate expectations. Berrios duly complied and aptly performed all of her duties and responsibilities, regardless of what positions she was occupying and/or what duties she was performing at Doctors.

67. Berrios met all of her job requirements and performed within and beyond her employer's job expectations.

68. Berrios' termination from employment with Doctors was unjustified, discriminatory and retaliatory in nature due to her physical and emotional disabilities, because she had requested reasonable accommodation and was not afforded one, and had complained and grieved about unlawful discrimination against her at the place of employment.

## IV. FIRST CAUSE OF ACTION
## (ADA: Disability Discrimination, Failure to Provide Reasonable Accommodation, Hostile Working Environment and Retaliation)

69. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them herein by reference hereto.

70. Defendant Doctors' has willfully violated ADA's provisions by having retaliated and terminated Berrios from her employment on account of her disabilities and because she requested reasonable accommodations due to her disabilities. As such, Defendant Doctors' is liable in compensatory damages against Plaintiff Berrios.

71. Berrios was disabled and because of her disabilities she was subjected to a hostile environment, and that the hostility was directed at her because of her disability. Her workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of her employment and created an abusive working environment.

72. On many occasions, Berrios was ridiculed due to her emotional conditions by Hospital personnel stating that she could no longer be a supervisor, among other statements. Berrios grieved to Doctors' Human Resources about the hostile working environment she was experiencing, yet her complaints fell upon deaf ears and Doctors' did not take any remedial actions.

73. Plaintiff Berrios hereby demands and requests that she be reinstated to her former employment with Doctors and that she be awarded back-pay for all lost salaries and employee benefits she would have earned but for her unlawful termination of her employment due to her disabilities, from the date of her termination up until that date she is reinstated to her former employment. Berrios further demands reinstatement or front-pay in lieu thereof.

## V. SECOND CAUSE OF ACTION

**(Puerto Rico Act 44: Disability Discrimination, Failure to Provide Reasonable Accommodations, Hostile Working Environment and Retaliation)**

80. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

81. Defendant Doctors' has willfully violated Puerto Rico Act 44's provisions by engaging in discriminatory employment practices against Berrios on account of her disabilities by terminating her on account of said disabilities, and in retaliation for having engaged in statutorily protected conduct and for having requested reasonable accommodations. As such, Defendant Doctors is liable in compensatory damages against Plaintiff Berrios.

82. Plaintiff Berrios requests back pay and reinstatement or front pay in lieu of reinstatement.

## VI. THIRD CAUSE OF ACTION
## (Violation to Article II of Puerto Rico's Constitution)

83. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporates them herein by reference hereto.

84. Defendant Doctors' has violated Plaintiff Berrio's rights secured under Article II, Sections 1, 8, 16 of Puerto Rico's Constitution by violating her dignity, privacy, health at the work place and discriminating against her on the basis of her disabilities.

85. Berrios is entitled to compensatory damages as she has have suffered considerable economic and personal damages as a result of Defendant Doctors' conduct. Plaintiff Berrios is entitled to back-pay and reinstatement to her former employment.

## VII. FOURTH CAUSE OF ACTION
## (Violation to Puerto Rico Act Nos. 80 and 115)

86. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them herein by reference hereto.

87. Defendant Doctors has violated Plaintiff Berrios' rights secured under Puerto Rico Acts Nos. 115 and 80. Defendant Doctors' has discriminated against Plaintiff Berrios on account of her disabilities and because she grieved internally about discrimination and otherwise complained about her working conditions. After engaging in statutorily protected activity, including requesting reasonable accommodation, Berrios was retaliated and even discharged unlawfully by her employer.

88. Defendant Doctors has also unjustly terminated Berrios from her employment. As such, Berrios is entitled to an Act 80 compensation.

89. Furthermore Defendant Doctors retaliated against Berrios and terminated her from employment soon after she grieved to Mrs. Ramirez and other Hospital personnel involving her intolerable working conditions.

90. Plaintiff Berrios is entitled to compensatory and economic damages. Plaintiff Berrios has suffered considerable economic and personal damages as a result of Defendant Doctors' conduct. Plaintiff Berrios is also entitled to back pay for all lost salaries on account of her unlawful termination of employment. Plaintiff Berrios hereby also demands reinstatement to her former employment.

## VIII. FIFTH CAUSE OF ACTION
## (SINOT P.R. Act No. 139 Violation)

91. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them herein by reference hereto.

92. Defendant Doctors has violated Plaintiff Berrios' rights secured under Puerto Rico Act No. 139. Defendant Doctors' has discriminated against Plaintiff Berrios on account of her disabilities and such defendant did not refer or notify Plaintiff Berrios of her rights to seek protection of Puerto Rico's SINOT law. Plaintiff Berrios is entitled to compensatory and economic damages.

## IX. SIXTH CAUSE OF ACTION
## (Puerto Rico Civil Code Art. 1802 Violation)

93. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them herein by reference hereto.

94. Plaintiffs Ines M. Fuentes Berrios, Edward M. Fuentes Berrios and Ian M. Fuentes Berrios are entitled to compensatory and economic damages as they have suffered by Doctors'

discriminatory employment practices against their mother, Plaintiff Berrios. These Plaintiffs provided and continue to provide economic and emotional support for their mother following Plaintiff Berrios' unlawful termination of employment.

**WHEREFORE**, all premises being considered, Plaintiffs pray that this Honorable Court enter Judgment against Defendant Doctors' granting Plaintiffs the following relief:

(a) An award of compensatory damages, including but not limited to back pay and prejudgment interests, of not less than ONE MILLION DOLLARS ($1,000,000.00) to Plaintiff Berrios;

(b) An award of double compensatory damages under Puerto Rico Acts No. 115, 44 and SINOT.

(c) An Act 80 Severance Payment totaling $3,877;

(d) An award of costs and reasonable attorney's fees;

(e) Injunctive relief ordering Defendant Doctors to reinstate Berrios to her former employment;

(f) An award of punitive damages under the applicable federal statute invoked herein;

(g) An award of double compensatory damages to be determined under Puerto Rico Laws 44 and 115;

(h) Any other and further relief, which this Honorable Court may deem just, and proper; and

(i) A trial by jury.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 14th day of May, 2018.

**WE HEREBY CERTIFY** that on this same date, May 14, 2018, we electronically filed the foregoing certificate of service with the Clerk of this Honorable Court using the CM/ECF system which will send notification to all counsel in this case.

**/s/ MANUEL E. LOPEZ FERNANDEZ**
**USDC PR NO. 205507**
**Attorney for Plaintiffs**
B-12 Paseo del Prado
San Juan, PR 00926
Tel.: (787) 562-2040
email: lcdomanuel.lopez@gmail.com;
manrique.lopez@hotmail.com

**/s/ JOSE G. FAGOT DIAZ**
**USDC PR NO. 204112**
**Attorney for Plaintiffs**
166 Presidente Ramirez St., Apt. No. 2
Urb. Baldrich
Hato Rey, PR 00918
(787) 367-8702
Email:jgf@fagot-law.com